# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 04-20327-TLM |
| DAVID A. HOWARD, ) | |
| ) | MEMORANDUM OF DECISION |
| Debtor. ) | |
| _____ ) | |

## I.   INTRODUCTION

The chapter 7 debtor, David Howard ("Debtor"), seeks to avoid a lien interest of one of his creditors, Linda Alley ("Creditor"), under § 522(f)(1)(A).[1] Debtor contends Alley's judicial lien impairs his homestead exemption. Creditor counters that the value of the homestead real property and improvements is high enough that the lien causes no impairment whatsoever.

This contested matter was heard on May 9 and June 6, 2006, and taken under advisement. Upon consideration of the evidence introduced, the arguments of counsel, and evaluation of relevant authorities, the Court enters the following findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

---

[1] References are made to the Bankruptcy Code, Title 11, U.S. Code, as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 ("BAPCPA"). Debtor's petition precedes BAPCPA's effective dates of April 20, and October 17, 2005.

MEMORANDUM OF DECISION - 1

## II. BACKGROUND AND FACTS

### A. The property

Debtor filed a voluntary Chapter 7 petition on March 12, 2004. *See* Doc. No. 1. At the time of filing, Debtor resided on 6.12 acres located on Lower Beaver Slide Road, about two miles from Kamiah, Idaho. *See* Debtor's Ex. No. 3; Creditor's Ex. No. 1. The property is on a rocky outcrop, with an admittedly nice view. About an acre is usable for construction; the balance of the property is steeply sloped. Debtor constructed a residence on the property starting in 2003, doing much of the labor himself and hiring contractors for certain portions.

Based on testimony and photographs, some of the construction is quite good in both quality and finish, however problems with the residence abound.

The property has no developed water, and there is no potable water system in the residence.[2] Debtor erected a rainwater catch basin, and installed a water holding tank, but neither provides adequate nor reliable storage of potable water. Instead, containers of water are trucked into the site for drinking and domestic use.

The property has electric power and a septic system. The bathroom facilities, however, were not properly vented during construction, which results in a build up of methane gases. This problem has limited the use of portions of the structure.

---

[2] The parties disagreed whether a well could be drilled to provide water, and debated the success neighbors had in establishing reliable water sources. However, they agreed Debtor had not developed a well at the time of filing, or since.

The residence was constructed partially on a slope. While a concrete slab was laid, there are no concrete foundation walls. Wooden walls rest on the slab and, in places, are exposed directly to the dirt hillside. The hillside has started collapsing against the walls, and the integrity of the structural support of the residence is seriously suspect. A contractor, Tim Shaffer, opined it would take approximately $36,000.00 to correct the foundation and plumbing problems.[3]

### B. The property's value

As might be expected, opinions as to the value of this property run across a broad spectrum.

#### 1. Debtor

Debtor estimated the value of the property as of March 12, 2004, at $40,000.00 in his schedules.[4] *See* Doc. No. 7. He raised this estimate to $50,000.00 in a later amendment. *See* Doc. No. 29. This was apparently done to ensure the homestead exemption he claimed under Idaho Code § 55-1001, *et seq.* was fully utilized.

Debtor testified at hearing, contrary to his schedules, that he felt the real property and improvements were worth about $30,000.00 at the time of his

---

[3] Interestingly, Mr. Shaffer assisted Debtor in constructing the upper portion of the residence. Upon questioning, he admitted knowing this work was being placed on top of an inadequate and flawed base, and says he advised Debtor repeatedly of this problem. Nevertheless, Mr. Shaffer did additional work on the upper portions, was paid for it, and testified to the quality of the upper level.

[4] Debtor's statements in schedules have evidentiary import under Fed. R. Evid. 801(d). *See In re Webb*, 03.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003).

MEMORANDUM OF DECISION - 3

bankruptcy filing. In another aspect of his testimony, he estimated the land value alone at $5,000.00 to $5,500.00 per acre, leading to a land value for the entire 6.12 acre parcel of $30,600.00 to $33,660.00. Debtor acknowledges the location's view and the generally favorable market in the Kamiah hillside area as positive factors supporting this land value. But even though Debtor admits the structure is, at least in part, of nice quality and has actually been utilized as a residence for some time, his $30,000.00 estimate of value – given his per acre land values – gives no value at all to the structure.

### 2.   Appraisers

Several appraisers valued the property. The first, Mike Agee, was contacted at the behest of Creditor's state court lawyer. Citing an inability to come to a competent and defensible opinion, he refused to render an appraisal following his inspection of the property.

Creditor subsequently obtained the services of appraiser Janet Stroble, who completed her appraisals on May 8, 2006. Ms. Stroble initially valued the property at $70,500.00. However, she lacked confidence in her use of one comparable sale, and did a reevaluation less than a month later, arriving at a new figure of $93,700.00. Ms. Stroble emphasized the highly desirable view, the location, the general surrounding market, and what she characterized as the positive features of the construction. Though she also noted the defects in the foundation and plumbing, the lack of potable water, and the terrain issues, she concluded the

MEMORANDUM OF DECISION - 4

improvements did add value to the bare land. Ms. Stroble ascribed a $50,000.00 value to the real property, and concluded the structure enhanced that value by $43,700.00. Ms. Stroble's values were based on her 2006 inspection and analysis.[5] What her opinion of value was, as of the petition date, was unclear.

Debtor obtained the services of appraiser Carmen Coty to value the property.[6] Ms. Coty opined the total value of the property was $30,000.00 as of hearing and $25,000.00 as of the March 12, 2004 bankruptcy filing. She testified that comparables did not exist and would be of no use. Instead, her value was fundamentally a land value. She indicated any value for the improvements was essentially negated by the serious problems with the structural integrity, lack of potable water, and plumbing defects.

### 3. Assessor

An appraiser for the Idaho County Assessor's Office, Ron Funke, testified the value of the land in 2004 was $29,070.00. This represented a per acre value of about $4,750.00.

---

[5] There was much debate over the comparables used by Ms. Stroble, and how similar or dissimilar they were to Debtor's property. Additionally, much argument was presented over the nature, methodology and amount of the various "adjustments" she made to the comparables in reaching her opinion. Even Ms. Stroble was uncomfortable with the size and nature of some of the adjustments she had to make. She also conceded, in response to the Court's questioning, that the magnitude of the difference between her first and second appraisal would in certain circumstances require that each be reevaluated.

[6] Ms. Coty also viewed the property after the March 12, 2004 bankruptcy date. However, her report fails to note when the property was inspected or when the report was completed. *See* Debtor's Ex. 5.

MEMORANDUM OF DECISION - 5

Mr. Funke also assigned a value of $33,246.00 to the residence, and $2,484.00.00 to a shed and carport on site. His appraisal of the property took place while the residence was still under construction. He did not view the inside of the structure, though he did inspect the construction and estimate square footage from an external observation. He used an Oregon manual to calculate a construction cost based on square footage, added to that amount to account for what he felt were above average features, and arrived at an estimated replacement cost. He then reduced that figure by 25 percent to account for what he estimated was a 75 percent completion of construction.

The assessor's total valuation in 2004 was therefore $64,800.00.

### 4.     Reconciliation and determination of value

Each of the evaluations has flaws. No one opinion is compelling enough to be adopted by the Court as representing the "true" value of this property. Therefore, the Court attempts to determine value from the entirety of the evidence.

The primary value in this property is in the land itself. While there is some value to the structure, which is usable as a residence and has been so used for some time by Debtor, the problems with the foundation and plumbing are significant.

The Court finds the value of the land in March, 2004, was $33,660.00. Debtor in his hearing testimony estimated a value for the land of up to $5,500.00 per acre, yielding this amount for the entire 6.12 acre parcel. Debtor should be

estopped from arguing the land value is any less than that. Nevertheless, the Court has considered other evidence on the question of land value.

This $33,660.00 figure is greater than what would result from the assessor's per acre figure. However, the assessor's amount represented an average for land values throughout the County and is not specifically driven by this site or its characteristics. The amount of $33,660.00 is less than Ms. Strobles' estimate of $50,000.00, but this was based on her analysis of comparables as of 2006, and she did not persuasively testify as to 2004 land values. The $33,660.00 amount is higher than Ms. Coty's estimate of 2004 value, but her analysis of land value lacked detailed support.

The Court also finds the structure adds some value.

As noted, Debtor in his amended schedule C asserts a value of $50,000.00 for the property and improvements. With the land valued at $33,660.00, this effectively ascribes at least a $16,340.00 value to what he built there. The structure's value should be no lower.[7] The question is whether it is worth more than that.[8]

---

[7] Debtor amended his schedule C to reflect a real property value of $50,000.00 that was claimed entirely exempt. Doc. No. 29. While Debtor failed to amend his schedule A to also show a $50,000.00 real property value, he cannot seek to benefit from the higher exemption value without also accepting its burden.

[8] The Court is not persuaded by arguments that the structure is worth less. It is certainly worth more than $0, which is what Ms. Coty concluded. Even if some potential buyers would raze the structure and rebuild, that does not inevitably require the conclusion that the structure, in which Debtor has for some time lived and still resides, lacks any value for the present purposes.

MEMORANDUM OF DECISION - 7

Subtracting a $50,000.00 land value from her ultimate opinions, Ms. Stroble's approach generated effective values for the structure between $25,500.00 and $43,700.00. However, to this Court, she appeared to discount the impact of the foundation and plumbing problems and the lack of water supply, and there were other issues with her comparables, as alluded to earlier.

The assessor's approach, which led to a $33,246.00 structure value, was artificial. It relied on a manual-driven replacement cost, estimated degree of completion, and subjective adjustments for what were perceived as better-than-average or worse-than-average features or materials.

The problems with the deteriorating and unstable foundation, improper plumbing and methane gas, and lack of water negatively impact value to a significant degree. They are only partially offset by the investments in construction and quality. Considering the evidence as a whole, and recognizing the significant difficulties in arriving at a value for this residence, the Court finds the structure adds $20,000.00 to the value of the property. The value of the land ($33,660.00) and residence ($20,000.00) as of March 12, 2004, is therefore $53,660.00.

### 5.     Creditor's judgment, and other liens and interests

The parties agree there are no consensual secured claims. Other judicial liens on the property were previously avoided under § 522(f)(1)(A) without opposition. A $493.13 tax liability is the only other debt against the property.

MEMORANDUM OF DECISION - 8

Creditor's interest in the property arises from a judgment for $7,109.42 recorded on February 6, 2004 in the Idaho County real property records.

### III. DISCUSSION AND DISPOSITION

Section 522(f)(1)(A) allows a debtor to avoid a judicial lien to the extent the same impairs the debtor's exemption. The Code defines a "judicial lien" as:

> [a] lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding[.]

*See* § 101(36). Creditor's lien interest arose by virtue of the recording of the judgment in the Idaho County real property records. *See* Idaho Code § 10-1110. Absent the recordation and operation of this statute, Creditor would hold an unsecured judgment debt only, and have no lien. Creditor thus holds a "judicial lien" as defined by § 101(36).

Section 522(f)(1)(A) allows for avoidance of a judicial lien to the extent that such lien impairs an exemption to which a debtor would have been entitled. The Code also provides a methodology for determining impairment:

> (2)(A)  For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>
> (i)  the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

*See* § 522(f)(2)(A).

MEMORANDUM OF DECISION - 9

The Court has determined the fair market value of the property as of the date of the filing of the bankruptcy petition[9] was $53,660.00. Debtor has claimed a $50,000.00 homestead exemption. This exemption has not been assailed, and its amount is consistent with Idaho Code § 55-1003 as of the petition date.

Based on the foregoing, Debtor's § 522(f)(1)(A) request can be determined. *See Webb*, 03.1 I.B.C.R. at 27 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997)) (calculating impairment of a homestead exemption); *In re Darosa*, 318 B.R. 871, 876 (9th Cir. BAP 2004) (calculating impairment of a homestead exemption).

Under § 522(f)(2)(A), the sum of the contested lien ($7,109.42), all other liens ($493.13), and the amount of the exemption which could be claimed in the absence of any liens ($50,000.00) is $57,602.55. This amount exceeds the interest Debtor would have in the property in the absence of any liens (*i.e.*, fair market value) of $53,660.00 by $3,942.55. Creditor's lien is therefore avoided to that extent.[10] This means Creditor's judicial lien remains a secured lien against Debtor's property securing, as of the March 12, 2004 bankruptcy date, an amount

---

[9] The parties agree this is the relevant date, and they are correct. *See Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 391-92 (9th Cir. BAP 2003); *Webb*, 03.1 I.B.C.R. at 26.

[10] As noted in *Webb* and other authorities, and as acknowledged by the parties in their arguments, there is another way to reach the impairment amount. If one takes the value of the property ($53,660.00) and subtracts other liens senior to the judicial lien ($493.13) and the available exemption ($50,000.00), the remainder is $3,166.87. This is the amount of the $7,109.42 judicial lien that survives; the rest ($3,942.55) is avoided as impairing the exemption.

MEMORANDUM OF DECISION - 10

of $3,166.87. The balance, $3,942.55, becomes a general unsecured claim. *See In re Todd*, 194 B.R. 893, 898 (Bankr. D. Mont. 1996).

Additionally, while the question of post-judgment accrual of interest on the recorded judgment was ultimately not material to the § 522(f) issue, accrual of interest on the surviving judgment amount from and after the petition date may later be an issue for the parties. *See Webb*, 03.1 I.B.C.R. at 27 n.9.

## IV.  CONCLUSION

The Court concludes Debtor's Motion shall be granted. Creditor's judicial lien shall be avoided to the extent the same impairs Debtor's homestead exemption. The unavoided portion of the judicial lien is determined to be $3,166.87 as of March 12, 2004. Debtor shall submit an order consistent herewith. Creditor shall approve the form of order.

DATED: July 18, 2006

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 11